BENJAMIN H. MCELHINNEY, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27624. Promulgated July 11, 1951.

*Robert Mueller, Esq.,* for the petitioner.
*John P. Higgins, Esq.,* for the respondent.

---

[2] I. T. 4044, I. R. B. 1951–1, p. 2. [1951=1 C. B. 16.]

8

10

BLACK, *Judge:* During the taxable years petitioner was domiciled in Virginia and received income from a partnership which was organized in Texas and engaged in business in Texas. Petitioner's income from the partnership consisted solely of earnings on his capital investment which was petitioner's separate property. There is no dispute between the parties as to the net income of the partnership in any of the taxable years; the only issue is whether the petitioner's distributive share of income from the Texas partnership is the separate income of petitioner or the community income of petitioner and his wife.

Virginia is a non-community property state and under the laws of that state the consort's income from his wages and separate property is the separate income of the consort and taxable to him. Under the law of Virginia petitioner's wife had no vested interest in the income from the property of petitioner and the income at issue here is community income only if the instant case is controlled by the property laws of the State of Texas.

There could be no question but that if petitioner and his wife had been domiciled in Texas during the taxable years the income from the partnership would have been community income, even though petitioner's interest in the partnership was his separate property. See *W. D. Johnson,* 1 T. C. 1041. But petitioner and his wife were not domiciled in Texas; they were domiciled in Virginia. The question then is whether the law of the situs controls or whether the law of the domicile controls. If all the income had been rents from lands which petitioner owned in Texas, the law of the situs of the land would control and the income from rents would be community property even

though petitioner was domiciled in Virginia. *W. D. Johnson, supra.* In that case Johnson and his wife were domiciled in Kansas and we held that rents, issues, and profits from lands in Texas, whether the separate property of the taxpayer Johnson or community property of himself and wife, fell into the community. In so holding we said:

\* \* \* as to the rents, issues, and profits received from the lands located in Texas, our holding must be that petitioner is entitled to report such income on the community basis. Even if the lands should be held to be the separate property of petitioner, all income therefrom during coverture falls into the community under the law of Texas. [Citing authorities.] The law of situs of land controls as to the determination of whether or not the income from such land is separate or community income. *Commissioner* v. *Skaggs*, 122 Fed. 2d 721. Cf. *Hammonds* v. *Commissioner*, 106 Fed. (2d) 420.

But in the instant case by far the greater portion of the taxable income which is involved was not from rents, issues, and profits from lands which petitioner owned in Texas. In 1944, net income of the partnership from rents on real estate owned by the partnership was $365.44; in 1945, there was no net income of the partnership from land rents; and in 1946, the net income of the partnership from rents of real estate was $334.45. We hold that petitioner's partnership share of these rents was community income and one-half of it is taxable to him and one-half is taxable to his wife.

It is clear that by far the greater portion of the net income involved here was from three sources, namely: (1) rice farming by the partnership, (2) income from an interest which the partnership owned in Universal Motor Company, and (3) income from an interest which the partnership owned in Wilcox Grocery. The rice farming was done on lands in which the partnership owned an interest and on lands in which the partnership owned no interest but which were rented by the partnership for rice farming. This is shown by the following testimony of Benjamin H. McElhinney, Sr., which is in the record:

Q. The next item on the return is gross sales of rice showing an income there and there are expenses of the rice crop, cost of the rice crop, and it results in a net income to the partnership. Were these in the nature of crops raised on lands owned by the partnership of B. H. McElhinney, Son and Daughter?

A. Either owned by or rented. I rented some land as well as owned some land. So I couldn't tell you without going back to my books which year is which.

From the evidence which is in the record we would be unable to make any finding of fact as to what part of the profits from rice farming was due to rice raised by the partnership on lands owned by the partnership and what part was due to rice raised by the partnership on rented lands. The substance of petitioner's contention is that regardless of the source of his income from the partnership, whether it was profits from rice farming, profits from the grocery business, or profits from the automobile sales agency, it was all community income and that this was true notwithstanding petitioner's domicile was in Virginia.

Petitioner concedes since he was domiciled in Virginia that any income received from his personal services rendered in Texas would have been his separate income under such cases as *Herbert Marshall*, 41 B. T. A. 1064, and *Nathaniel Shilkret*, 46 B. T. A. 1163, affd. 138 F. 2d 925. But petitioner contends that because the income in question was from a partnership business which had its location in Texas the law of the situs and not the law of the domicile controls in just the same way as if all the income in question was from rents, issues, and profits from real estate separately owned by petitioner and located in Texas. We are unable to agree with this view. Petitioner cites no case which supports such a view. In affirming *Nathaniel Shilkret, supra,* the United States Court of Appeals for the District of Columbia held that the California community property law did not apply to the personal service earnings of a taxpayer in that state whose domicile was in a non-community property state. In the course of its opinion the court said:

In most of the cases we have examined the place in which the money is earned and the place of domicile are the same, in consequence of which no question of the law of domicile was involved; but where the place of acquisition and the domicile are different, certainly the majority of cases apply the common-law rule of domicile. The question is not new and was much debated especially in the preparation of the Restatement. In the early stages of the Institute discussion of the situs view was recommended, doubtless under the influence of some State statutes on the subject, but ultimately the domiciliary rule was substituted and appears now as Section 290 of the Restatement (Conflict of Laws), as follows: "Interests of one spouse in movables acquired by the other during the marriage are determined by the law of the domicile of the parties when the movables are acquired."

\* \* \* \* \* \* \*

\* \* \* This conclusion, supported as we think it is by the weight of authority, seems to us to be manifestly the logical result. For as was said by Chancellor Kent: "It is a settled principle of international jurisprudence and one founded on a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to, and distribution of personal property, wherever situated, is governed by the law of the country of the owner's \* \* \* domicile \* \* \* and not by the conflicting laws of the various places where the goods happened to be situated.

It is true, of course, that the income involved in the *Shilkret* case, *supra,* was from the personal services of the taxpayer, whereas the income involved here is from partnership interests located in Texas where the partnership, as we have already explained, was interested in the operation of a grocery store, an automobile selling agency, and a rice-growing business. Petitioner argues that these latter facts make the instant case distinguishable from the rule of the *Herbert Marshall* case, *supra,* and the *Nathaniel Shilkret* case, *supra.* We are not convinced that this is true.

Petitioner relies largely upon *Hammonds* v. *Commissioner*, 106 F. 2d 420, and *Skaggs* v. *Commissioner*, 122 F. 2d 721, to support his view.

We do not think these cases are controlling. The issue presented by the facts in the instant proceeding, we think, is somewhat similar to the issue involved in *Estate of E. T. Noble*, 1 T. C. 310, affd. (C. A. 10, 1943), 138 F. 2d 444. In that case the taxpayer Noble and his wife were domiciled in Oklahoma, a non-community property state. Income was received from Noble's separate property which was an interest in a partnership or joint venture located in Texas. Noble and his partner were leasing Texas land for development as gas and oil producing land and petitioner's share of income from the leases was held to be income taxable entirely to the husband, Noble. In the *Noble* case this Court explained that neither the *Hammonds* case nor the *Skaggs* case was controlling. In the *Hammonds* case it was held that "The leases being community property, petitioner and O. O. Hammonds [petitioner's husband] were entitled to file separate returns, each reporting one-half of the income derived from the sale thereof." The *Hammonds* case involved the nature of the gain derived from the sale of community property. The petitioner herein has conceded that his interest in the Texas partnership was his separate property and not community property. In that portion of the *Noble* case wherein we discussed the *Skaggs* case we said:

* * * it was held that Skaggs, then domiciled in Texas but owning separate *real estate* in California from which he received rentals, was not entitled to report that income as community income. It was held that, since under the laws of the State of California income from separately owned property is taxable to the owner and not to the marital community, the law of the state in which the real property was located must .control, and that, even though the rentals from separately owned real estate in the State of Texas constitute community income, a different rule must obtain where the real estate is located in the State of California. The Supreme Court denied certiorari, 315 U. S. 811. We do not think that the decision of the court in that case has a material bearing upon the issue presented here. [Emphasis added.]

As we have already stated the issue presented in the instant proceeding with the exception of the small amount of rental income of the partnership in the years 1944 and 1946 from real estate owned by it is similar to that presented in the *Noble* case, *supra*, and is similar to one of the issues in *Trapp* v. *United States*, 177 F. 2d 1. In these cases, as in the instant proceeding, the taxpayer's interest in the Texas partnership was his separate property. Like the taxpayer Noble, Trapp and his wife were domiciled in Oklahoma and Trapp received net income as a member of a partnership leasing oil producing lands in Texas. Trapp's interest in the partnership was likewise his separate property and the court disposed of the issue by saying "the net gain [net income] from the leases was taxable to the taxpayer without division. *Noble* v. *Commissioner, supra*."

On the authority of the cases which we have cited and discussed above, we think the Commissioner did not err in taxing to petitioner

his entire share of income distributable from the partnership, except his share of the net income from rental of real estate in 1944 and 1946 which was owned by the partnership. As we have already pointed out, income from rentals of real estate is controlled by the law of the situs and not by the law of the domicile. Therefore, in a recomputation under Rule 50, petitioner's partnership share of the income from rents from real estate owned by the partnership should be taxed as community income, one-half to petitioner and one-half to his wife

Another thing to which we think we should make some allusion is that petitioner's income tax returns which are in evidence and also his wife's income tax returns which are in evidence show that they each had certain income from their personal services rendered in the State of Virginia. Income from personal services in the State of their domicile was the separate income of the spouses and should be so treated in a recomputation under Rule 50.

*Decision will be entered under Rule 50.*