CLARENCE A. CHAMPION

*v.*

SMITH MYERS *et al.*

· *Opinion filed February 17, 1904.*

1. DIVORCE—*when recital of decree must prevail.* A specific recital in a divorce decree that the defendant had been guilty of adultery must prevail on writ of error, where the certificate of evidence does not purport to contain all evidence on which the court acted.

2. SAME—*when wife may be given title to real estate in lieu of alimony.* A court of equity may assign to the wife, as alimony, part of the husband's real estate in fee where special equities exist, as that her earnings went toward the purchase of the property.

WRIT OF ERROR to the Circuit Court of Carroll county; the Hon. JAMES SHAW, Judge, presiding.

GEORGE L. HOFFMAN, and HENRY MACKAY, for plaintiff in error.

RALPH E. EATON, and C. W. MIDDLEKAUFF, for defendants in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is a writ of error brought to reverse the decree entered in the circuit court of Carroll county awarding Marianna, the wife of the plaintiff in error, a divorce, and

granting to her, as alimony, the fee title to two town or city lots in the town (now city) of Lanark, and also the title to the household and kitchen furniture in use in the dwelling house situate on one of said lots. Subsequent to the rendition of the decree for divorce the wife intermarried with the defendant in error Smith Myers, and on the 17th day of July, 1903, departed this life, leaving as her heirs and legal representatives the defendants in error. This writ was sued out on the second day of October, 1903.

The bill charged the plaintiff in error with adultery with one Minnie Reed. The plaintiff in error was personally served with summons but did not appear, and default was entered against him. The court heard the testimony of witnesses taken orally in open court, and a decree was entered which recites that the court found, from the evidence heard, that all of the allegations of the bill were true, and the decree also recited, as a special finding of fact, that the plaintiff in error was guilty of the charge of adultery.

There is a certificate of evidence in the record, but the certificate does not state that that certified to was all the oral evidence that was heard. The specific finding recited in the decree that the plaintiff in error was guilty of adultery must prevail, in the absence of the preservation of all the evidence upon which the court acted. (*Bowman* v. *Bowman*, 64 Ill. 75.) Moreover, we have examined the testimony as preserved by the certificate and think it amply supports the finding of the court.

The decree also recited that the court found, from the testimony, that the plaintiff in error owned three lots, namely, lots 2, 7 and 8, in block 5, Carry's second addition to Lanark, in Carroll county, on each of which lots was a dwelling house, and that the plaintiff in error was also the owner of household effects and "of cash of large value," and that the wife had no means of support, was

in delicate health and wholly dependent. The decree awarded to the wife the household furniture and the title in fee simple to two of said lots, namely, lots 2 and 8, in lieu of and as alimony, and declared the plaintiff in error to be the owner of the other lot. These three lots, with the houses thereon, were of the value of $800 to $1000 each. The principal contention is, that the decree should be reversed in so far as it invested the wife with the fee of the two lots.

The right and power of a court of equity to assign as alimony to the wife a part of the real estate of the husband in fee has been frequently declared by this court. (*Armstrong* v. *Armstrong*, 35 Ill. 109; *Ross* v. *Ross*, 78 id. 402; *Dinet* v. *Eigenmann*, 80 id. 274; *Robbins* v. *Robbins*, 101 id. 416; *Wilson* v. *Wilson*, 102 id. 297.) If the wife has no other claim than that which arises from the existence of the marriage relation, an allowance payable in money at stated periods, which remains within the control of the court to increase or diminish, is the proper mode of granting alimony, to which may be added absolute transfer of articles of personal property, as household furniture, when such is shown to be proper and advisable and peculiar conditions of the parties and of the property of the husband may render it best and proper that a money allowance in gross should be made. If the wife has, from equitable considerations, other and additional interests in her husband's property than such as attach to her status as a wife,—as, if her money came to the hands of the husband and has been invested by him in real estate to which he holds the title, or if her earnings or savings have gone into his possession and aided him in acquiring the real estate,—the court may properly, when dissolving the marriage relation, decree that the wife shall be vested with the title in fee to such real estate or some other real estate belonging to the husband, in order to effect an equitable and fair adjustment of the property rights of the parties.

We think the evidence as preserved in the certificate disclosed special equities in favor of the wife in the case at bar. We find from the transcript of the oral testimony that it advised the court as to the condition and necessities of the parties and to what extent the wife had contributed to the accumulation of property and the support of the family, which consisted of herself and her husband. It appeared from this testimony the parties were married in 1882 and lived together for seventeen years; that the husband became infatuated with a Mrs. Reed, made many trips from home with her and was much of the time in her company, and practically abandoned his wife. He was a carpenter, and his wife, for a number of years after their marriage, was employed as a clerk and for a further period of time worked for his mother. The husband received her earnings. While testifying she was asked, "Where did the money come from that bought these properties?" to which she replied: "We used to work together; I worked a long time myself after we were married; I clerked for seven or eight years steady, and Clarence worked for a great deal of it; of course, he fell heir to some of the money from his people of late years." She also said: "No money that I fell heir to went into these properties; I worked for his mother a year and a half; the proceeds of my labor went into the general fund, wherever it was needed to be used."

The testimony was not improperly regarded by the chancellor as establishing that special equities existed in favor of the wife, which warranted a departure from the general rule relative to the allowance of alimony to a wife whose right is only such as results from a legal effect of the existence of the marriage relation. Under such circumstances it was within the power of the chancellor to invest the wife with the title in fee to the lots, and the adjustment of the property rights of the parties appearing to us to have been fair and equitable, the decree will be affirmed.                *Decree affirmed.*